Good morning, Your Honors. May it please the Court, my name is Gil Burnbrake. I'm an Assistant Attorney General with the Office of the Attorney General, and I represent the Government of the Commonwealth of Northern Mariana Islands and Governor Benigno Fidele in his official capacity. They are the opponents' defendants in this case. I will be probably reserving approximately five minutes for rebuttal. Before starting on the merits, I first would like to apologize to the Court for our office not being able to file a reply brief. The issues in this case certainly warranted one. But as Mr. Cushing may know, we have a small office and our government is almost constantly broke, so there's always a chronic shortage of attorneys and time to address all the needs of the Commonwealth. Are you describing Washington or the Commonwealth of Northern Mariana Islands? I can tell you, Your Honor, there are some weeks where we're just scrambling just to keep the lights on. So, turning to the issues, I have to say I haven't had a long legal career so far, but this is one of the more interesting cases I've ever run across. There's this interesting interplay between federal constitutional law and novel and complex commonwealth law, especially the commonwealth constitutional law. Because of the novel and complex issues of commonwealth law, appellants, first and foremost, seek to have this Court certify questions of law to the Commonwealth Supreme Court. That makes a lot of sense, but there's generally a prudential reason why we're reluctant to do that. When your side hasn't asked for it in the trial court, and there's plenty of good reasons for that because we want to make sure that trials resolve everything, and so if you don't bring it up then, we can certify it now, but it's kind of a rare case. Why didn't you ask for that or your side ask for that at the trial level? I mean, who was it? Judge Munson brought it up and ruminated about it, but they decided against it, or was it Cunard? I can't remember which one. It was actually... You had so many judges in this case, you can hardly keep track of them. But it was brought up, but you didn't ask for it. No, it's true that at no point before the trial did we ask to have any of these issues certified. Is there any explanation for that? None of this is on the record, but it's kind of Judge Munson towards his later years, he was kind of hostile to certifying questions to the Supreme Court because it had been his experience that the scene of my Supreme Court was very slow in answering questions. But... This is a constitutional interpretation question. It seems like the Northern Mariana Islands should weigh in on what before cause means in this provision. I absolutely agree, and I still believe that even though we didn't ask before trial, and we're asking now, that there are still particularly compelling reasons why the Ninth Circuit right now should certify questions to the Commonwealth Supreme Court. It's a tricky question, because ordinarily cabinet-level people like this come and go with the administration that appoints them. But here, there's this unusual foreclause language in there that you know, and you ordinarily know what that means. And I was trying to think through, well, how did that get in there? Could that have been there for a reason? Maybe so, because this person was a woman's rights advocate. And wasn't she supposed to get in everybody's face and make sure that women got their fair share of whatever it is that they were entitled to? And so I think maybe the legislature felt, so long as she's doing that, we don't want her to get kicked out just for political reasons. We want her to be able to stay, unless there's foreclause. I mean, I can see it kind of going both ways, but on the other hand, maybe you're right that that Supreme Court ought to decide it. But now you've kind of scared me. Notoriously slow in deciding these issues. That's actually... I was going to very much address that. Just to let the Ninth Circuit know that the last time it actually certified a question, the Ninth Circuit certified a question, was back in 2009. The case was Kabir versus public school system. I think from, I believe the Supreme Court has changed its ways. It took only eight months for the Supreme Court to answer the question. They were very quick on it. The Ninth Circuit certified it in April of 2009, and the Supreme Court issued its decision December of 2009. So there's hope. Yes. I think they... Which questions, so we'll let the other side know. I think they know already. Which questions or question would you like us to certify? Well, I think the most important one to certify is the implied constitutional tort. What about the implied... You think that's the most important one? Well, I don't think it's necessarily the most important, but if there's going to be anyone, and if under the particular compelling reasons, it's that one just because the district court just on its own, completely out of, you know, the plaintiff never pleaded it and was never argued at trial court, and all of a sudden the district court comes out and says, hey, under Article III, Section 22, there's an implied constitutional tort, and the plaintiff can now recover damages. That was Judge Kuhnhauer. He just kind of came up with that. Yes. It was very surprising, to say the least. Now, going back with the other issues, other questions, regarding the term of the special assistant, of course, that's very important. We absolutely would like to have that certified to the Commonwealth Supreme Court, too. So both of them? Yes. I mean, it's an issue of constitutional law. It's very ambiguous, at least from our perspective. It's not ambiguous. It's very strange that the way it was drafted that way, without having an expressed term limit or not having explicitly saying serving at the pleasure of the governor, but as we stated in our briefs, that does not necessarily foreclose that the appointee, the special assistant term does not, or does in fact have a term, and that it ends with expiration of the appointing governor. So we believe the interest of the Commonwealth in having that question settled, especially for all time, by the Supreme Court is especially profound in this case. Has there been any move in the legislature to deal with this question, either to affirm for cause or to eliminate it? There has not been any movement. I can only speculate. I know, like within our government, they're kind of waiting to see, maybe perhaps with the outcome of this case. But in terms of our legislature, no, there has not been any movement. Why would the drafters, there's different various references to other positions for cause with term limits, different cabinet level or equivalent positions. I'm just trying to figure out from your view, and I'll ask the other side this, why would the drafters have not clarified the term of the special assistant in this way? Just to give you a little background, this provision came out of what we call, well, shorthand, CONCON, Constitutional Convention that was held in 1985. I looked over the whole legislative history. Nobody really talks about it. They kind of just talk about, you know, they do talk about how it's a forecast provision and how they want to unpoliticize, to a certain extent, the office. But looking and considering all the other constitutional provisions, I don't think that forecloses an interpretation that Ms. Pallicant's term ended with the expiration of the governor's term or the appointing power's term. If you look, well, there's a general background, like doing research in the secondary sources and case law. It's giving an executive level official, especially what is essentially a lifetime tenure, is an extraordinary occurrence. That such interpretation would be extraordinary. Almost always the cases are finding or limiting the terms of officials. And you can see that in the case cited in my brief, Rollins, where they state, like it's a general rule that where a term is not prescribed, such as the case we have here, that the person's term ends with the expiration of the term of the appointing officer. So you have that, all that background. And all those other constitutional provisions don't really change that. I mean, they're all reconcilable. You can see all the other constitutional officers either serve at the pleasure of the governor, so they're in effect, in a way, term limited, or they have set terms. They have like a four-year term. Well, the legislature knew all of that and wrote something different for this person. And you caught my ear when you said they were trying to depoliticize this. And couldn't that easily be seen as the district court in this case saw it as a way to depoliticize it. In other words, we're not going to let you kick somebody out just because the administration changes or this party gets in or that party gets in. This person's going to be a bit of a gadfly, so you can only get rid of this person for cause. I mean, there's some sense to that. And especially since you tell me they were trying to depoliticize it. All the other stuff that you're talking about is politics. And they say we don't want this to be politics, so therefore we put it for cause. Whether that's a good or a bad idea is for the legislature. But I can see how they might think that. There's definitely that possibility. But now we go on to the results. You have what we consider the absurd result of giving this person lifetime tenure when really no other state officials, as far as we can tell in our research, ever have that. On the federal level, it's usually only federal judges. That's like the equivalent of what we get. Good behavior, you can't do anything to us. So if you look at the other evidence, and you have all these other prior special assistants just serving until the expiration of the appointing governor. So I believe the evidence is in the record, and that kind of evidence is allowed to be used. Practical construction of the constitutional provision indicates that this constitutional provision was supposed to be interpreted with maybe what's unsaid background, but it's still there that they were in fact term limited to the expiration of the appointing governor. Will CNMI's Supreme Court have the same body of information before it to make this determination that we have before us? In other words, this is it. For cause, apparently they were trying to depoliticize it. That's all they'll have? I think, yeah. I think essentially they probably will, unless we can somehow dig up the archives. So they'll make a political decision? This special assistant isn't a border commission, is it? No. Because that's covered by section 21, and there are very explicit ways of getting rid of a border commission. Yes, Your Honor. This is an orphan kind of a, what does it mean when it says section D of 22? The governor shall include in the budget of the executive branch the funding necessary to fully implement the provisions of this section. What if the governor decides it's time for this person to go and doesn't fund the thing? Is that a possible way to? I believe under that provision the special assistant could take court action. Bring mandamus against the governor? Exactly. All right. Actually, I've run well deep into my desire to reserve time. Well, it's an interesting question because it's a hiatus in the legislation, and a hiatal vacancy in the legislation is always a wonderful thing for lawyers. Thank you, Your Honor. Thank you. May it please the court. Douglas Cushney appearing for Emerentiana. Peter Palachin. I'd like to pick up on the initial comments addressed to the council for the government, and that's with respect to the certification issue. The government, as we now know, did not move to certify any of these questions, which is now asking this court to certify to the Commonwealth Supreme Court. Consequently, we have a decision made by Judge Munson, Judge Kohenor, based upon a uniform set of facts which have been the same throughout this entire litigation presented by the government, and we have a set of facts that have not changed, and the situation with respect to the certification is not going to change as far as the facts go either. Now, the certification of these questions, then, are being taken after the district court has made its decision, so basically the government is asking this court to give it at least two bites at the apple, so to speak. Next, the time sequence situation was brought up by the court here also. I have been practicing in the Western Pacific and the Far East for a little bit longer than council for the government, and over the last, oh, 40 years or so, handling matters before the Trust Territory High Court, as well as our Commonwealth Supreme Court, my personal experience in that, and talking with other attorneys who have been practicing roughly my length of time, is that the normal term for an appeal, say, to the Commonwealth Supreme Court will be at least two years before a decision is made. I have had personal experience of taking four years, and I know that other attorneys have had similar experiences. So, treating a certification issue lightly in the context of this case, I submit, would be an error, and we are going to be standing around for a long time waiting for a decision. Next, with respect to the issue of the four cause, which is set forth in the Commonwealth Constitution, the issue in this case is very straightforward, at least from our perspective. The issue is not type of cause, whether the cause is blue or red or white. The issue is simply whether a personnel action trumps a four cause requirement for dismissal. That's it. The government has never maintained that Ms. Pallican was dismissed for cause. They have never maintained that, in fact, Ms. Pallican was terminated. The sole argument which has been presented by the government to the district court and this court is that she has a term limit, a term limit which is coterminous with the appointing authority. In this case, it would have been former Governor Bovalta. Once he goes out, she goes out. But that is not the history of this particular provision. This particular provision started off in the second con con. The provision reads, at least in part here, the governor shall appoint a special assistant for women's affairs. Such person who shall serve at the pleasure of the governor shall be a woman with standing in the community. Obviously, the key language is such person who shall serve at the pleasure of the governor. There were public hearings subsequent to this particular proposal being submitted. After the public hearings, the, for the, at the pleasure of the governor was deleted. And that's in Exhibit 9, that's what you're reading. That's correct, Your Honor. And we come up in subsection A, at least on the original adoption, that single sentence, the special assistant may be removed only for cause. Period. Stop. Something like nine words. Now, the government says that these words are ambiguous. I mean, what is ambiguous about the special assistant may be removed only for cause? The government concedes that she was not removed for cause. In fact, the government says she wasn't removed. The term just ended. Now, the court has raised the issue of, this is kind of an anomalous provision, if I could use that word. Well, I note that this panel, and I'm having practice before the court before, I'm confident that there are probably no judges who are of Chamorro or Carolinian descent and who have been raised in the Northern Mariana Islands. Consequently, we're dealing with a cultural thing here. We're dealing with a cultural thing where you have essentially a male-dominated society. And while I don't want to say women are in second place, I mean, that's the realities of life in the sense that it is a male-dominated society. It's a macho society. There's a Spanish heritage besides Chamorro and Carolinian. So, what do we have? We have an initial proposal before the Constitutional Convention saying we can get rid of this lady for any reason or no reason, at will appointment. Well, obviously, there was a reaction in the community to that. The reaction in the community was, clearly, that is not what we want in our society. We want a person who is appointed and who is competent, that's one of the requirements, to fill this position and maintain that position until she does something that warrants a termination for cause. So, you would say that the statement that this was intended to depoliticize it has some merit. Yes, absolutely. As I said, this is what I was trying to think through. This is a woman who's getting into the middle of a man's society and she's going to be appropriately throwing some weight around and they don't want people just canning her at the pleasure of the government. I'm kind of making your argument, but that's what I hear you saying. That's correct, Your Honor. This particular lady, Emmy, that I represent, is precisely that type of lady. She is going to get in somebody's face if they are not doing what she feels is appropriate for women's rights and the promotion of women's programs and so forth. It's awkward to have her carry over into an administration that she opposed, but you're saying so be it. Well, is there really a difference in promoting women's rights between blue and red, Republican, Covenant, Democrat? Is one group in favor of unequal pay or raping women? No, that is just not correct. We are here with a woman who is appointed during good behavior, which is, I acknowledge, it's unusual, sure it is. We all understand that, understand that living in the mainland America, but it is not going to be unusual living on a little bitty island out in the western Pacific where you have a different culture. Given that the Constitution directs the governor to appoint the special assistant, and it's a cabinet-level position charged with advising the government, and again the governor is to appoint, can't it be seen as ambiguous, the for-cause phrase, when trying to determine the meaning that the special assistant is protected against removal without cause only during the term of the appointing governor? But that's not what it says. You see, we have exact language here, and what the government is attempting to do is say, well, by implication, let's read all of these other provisions in light of our section here. But the section that we're dealing with is very clear, termination only for cause. You could read into that, maybe I'm wrong, but you could read into that, it says the governor shall appoint, and then it says the special assistant may be removed. You could read into that by the governor only for cause, meaning the person who appointed that person. That's possibly the ambiguity. In other words, they were telling the governor, look, you appoint this person, but then only for cause can you get rid of this person. Well, either that governor or a subsequent governor, yes, that's the only way you can remove the special assistant for women's affairs, for cause. There's no other way that she can be removed. And we certainly have a great deal of law in the United States as to what is for cause. But of course, that's not even an issue here. That's not a factual situation that is presented to this court. If it was, then obviously we would have a slightly different argument. Was the cause good, bad, indifferent? Is it a cause that someone would recognize in the Northern Marianas? But that is not before the court, because government admits there is no cause for dismissal. What about the implied private right of action in a constitutional tort? That kind of came out of nowhere, didn't it? I wouldn't say nowhere, Your Honor, because the implied constitutional tort is a part of the restatement of torts, which is by statute applicable in the Northern Mariana Islands. It did, but you didn't ask for it. It seems to me that the judge just came up with this by himself. Am I wrong about that? In the sense that there was pled implied constitutional tort, count three, no. There's nothing like that. However, there was certainly pled in the complaint, I believe it's paragraphs 15 through 18, wherein we pled both a violation of constitutional rights, set out the facts for it, set out the violation of U.S. constitutional provisions, as well as damages. That's what we're talking about. Sort of novel issue, fairly litigated below? Fully or fairly litigated below? It sounds like the district judge just, I mean, without any discussion during the time that it was pending before the court. The judge certainly came up with the decision, I wouldn't say out of the blue, because there's substantial legal basis for it. But I wish to point out, in response to Your Honor's query, that after the decision was made, under our rules, of course, the government can come in for reconsideration under, say, Rule 54, as long as it's pending before the court. They can come in under 59, they can file a Rule 60B motion. All of these things can be done to raise the issue and tell Judge Colanere, look, you made a mistake, or we're surprised, and we want to brief this. And having appeared in front of him, I think you would have said, okay, sure, brief it for me. And we'll take another look at it. So in the sense that it came out of the blue, it had a substantial legal basis. In the sense that it was not pled in implied constitutional tort, Your Honor is correct, of course, that did not happen. But the pleadings, I submit, were sufficient to cover this type of a situation. And after all, we have an individual who has been thrown out of her position and has no compensation. So what happens then? It's a hollow provision. So right now she is out of that position. Is that position filled with someone else? I believe it is filled with someone else. I defer to the government on that, but I'm quite sure it's filled with someone else. And this someone else, of course, is a totally innocent person, so far as I know. So if Emmy is reinstated, then someone is going to have to go out, which, of course, raises the conundrum. This person was appointed. Is there cause for her dismissal? Or was the original appointment defective because Emmy was not dismissed for cause? So we raise up a whole bunch of other brand new problems, which, of course, gets into the area of front pay and other issues which I do not believe I have time here. Unless the court has some other questions. Thank you very much. Thank you, Your Honor. First, just to answer whether her position is filled. The position is currently filled by another woman. Can you play that out for me? Let's say we decide this question. Affirm or certify or reverse. How would that affect what's happening with that position? I believe if the court affirms reinstatement, then obviously she would be reinstated at that position. No, if we affirm the district court. Yes. I believe that the Commonwealth would have no choice but to reinstate her in the position of Special Assistant for Women's Affairs. Especially considering the federal court order would be supreme over anything the Commonwealth would argue or would want. But just to hit back with the Supreme Court time. Like I said, I just go back to Kibir versus public school system. It seems like the Supreme Court takes Ninth Circuit certifications very seriously. And I have no reason to doubt that our Commonwealth Supreme Court in this case would not take it seriously to issue a timely decision. I see that my time has run out. Thank you very much, Your Honor. Thank you. Thank you very much for your presentations, your argument cases.
judges: Goodwin, Trott, Murguia, Cjj